**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CARHARTT, INC.,

                Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Carhartt, Inc. ("Carhartt" or "Plaintiff"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"). Defendants are jointly promoting, advertising, offering for sale, selling, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Carhartt's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Carhartt alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Carhartt's state law claims

because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Carhartt is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business at 5750 Mercury Drive, Dearborn, Michigan 48126. Carhartt is, in part, engaged in the business of manufacturing and distributing throughout the United States, including within this district, a variety of high-quality goods under multiple famous common law and federally registered trademarks, including those identified in Paragraph 14 below. Carhartt offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States. Defendants, through the offer to sell and sale of counterfeit and infringing Carhartt branded products, are directly and unfairly competing with

2

Carhartt's economic interests in the United States, including within the State of Florida and causing Carhartt irreparable harm and damage within this jurisdiction.

5.     Like many other famous trademark owners, Carhartt suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Carhartt's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Carhartt name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Carhartt expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies such as Carhartt to expend significant resources across a wide spectrum of efforts in order to protect both consumers and itself from confusion and the erosion of the goodwill embodied in Carhartt's brand.

## THE DEFENDANTS

7.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United

States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

8.      Defendants use aliases in conjunction with the operation of their business, including but not limited to those identified by Defendant Number on Schedule "A."

9.      Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Carhartt's trademarks as described herein.

10.      Defendants directly engage in unfair competition with Carhartt by advertising, offering for sale, and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Carhartt's trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Carhartt. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Carhartt branded goods into the State.

11.      Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have anonymously registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful counterfeiting activities.

12.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Carhartt's trademarks unless enjoined.

13.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Carhartt's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Carhartt. Moreover, Defendants are using Carhartt's famous name and/or trademarks to drive Internet consumer traffic to their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Carhartt's legitimate marketplace and intellectual property rights at Carhartt's expense.

## COMMON FACTUAL ALLEGATIONS

### Carhartt's Business and Trademark Rights

14.     Carhartt is the owner of all rights in and to the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Carhartt Marks"). The Carhartt Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified on Schedule "B."  True and correct copies of the Certificates of Registration for the Carhartt Marks are attached hereto as Composite Exhibit "1."

15.     The Carhartt Marks have been used in interstate commerce to identify and distinguish Carhartt's high-quality goods for an extended period.

16.     The Carhartt Marks have been used in commerce by Carhartt long prior in time to Defendants' use of copies of those Marks. The Carhartt Marks have never been assigned or licensed to any of the Defendants in this matter.

17.     The Carhartt Marks are symbols of Carhartt's quality, reputation and goodwill and have never been abandoned. Carhartt has carefully monitored and policed the use of the Carhartt Marks and has never assigned or licensed the Carhartt Marks to any Defendant in this matter.

18.     The Carhartt Marks are well-known and famous and have been for many years. Carhartt expends substantial resources for developing, advertising, and otherwise promoting the Carhartt Marks and products bearing the Carhartt Marks.

19.     Further, Carhartt extensively uses, advertises, and promotes the Carhartt Marks in the United States in association with the sale of high-quality goods.

20.     As a result of Carhartt's efforts, members of the consuming public readily identify merchandise bearing or sold using the Carhartt Marks, as being high-quality goods sponsored and approved by Carhartt.

21.     Accordingly, the Carhartt Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

22.     Genuine goods bearing the Carhartt Marks are widely legitimately advertised, promoted, and offered for sale by Carhartt, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Carhartt's overall marketing and consumer education efforts. Thus, Carhartt expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization, search engine marketing, and social media strategies. Those strategies allow Carhartt and its authorized retailers to educate

consumers fairly and legitimately about the value associated with the Carhartt brand and the goods sold thereunder, and the problems associated with the counterfeiting of Carhartt's trademarks.

**Defendants' Infringing Activities**

23.     As part of a single enterprise, Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Carhartt Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Carhartt Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using virtually identical copies of one or more of the Carhartt Marks for different quality goods. Carhartt used the Carhartt Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Carhartt's merchandise.

24.     Defendants' Counterfeit Goods are of a quality substantially different than that of Carhartt's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Carhartt, despite Defendants' knowledge that they are without authority to use the Carhartt Marks. The net effect of Defendants' actions is likely to be confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Carhartt.

25.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores using, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the Carhartt Marks without Carhartt's permission.

26.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Carhartt Marks. Specifically, Defendants are each using counterfeits and infringements of Carhartt's famous name and the Carhartt Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Carhartt and non-Carhartt goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Carhartt's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Carhartt and the consuming public by (i) depriving Carhartt and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Carhartt's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Carhartt Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Carhartt's overall cost to market its goods and educate consumers about its brand via the Internet.

27.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Carhartt and the consuming public for Defendants' own benefit.

28.     At all times relevant hereto, Defendants in this action have had full knowledge of Carhartt's ownership of the Carhartt Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

29.     Defendants' use of the Carhartt Marks, including the promotion and advertisement, reproduction, distribution, offering for sale and sale of their Counterfeit Goods, is without Carhartt's consent or authorization.

30.     Defendants are each engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Carhartt's rights for the purpose of trading on Carhartt's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not enjoined by this Court, Carhartt and the consuming public will continue to be harmed.

31.     Prior to filing this action, Carhartt issued several cease-and-desist letters to Defendant Number 49 who did not respond to the cease-and-desist letters, and continued to advertise, offer for sale, and sell their counterfeit and infringing goods along with the other Defendants.

32.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Carhartt's genuine goods and Defendants' Counterfeit Goods, which there is not.

33.     Although Defendants are being named individually, Carhartt has good cause to believe the E-commerce Store Names are all operated and/or controlled by the same individual and/or organization.

34.     At the very least, it is clear Defendants are either affiliated given the visibility of their various e-commerce stores and the similarity of their concurrent actions, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Carhartt and the overall consumer market in which they operate because of Defendants' concurrent actions.

35.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Carhartt.

36.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

37.     Further, Defendants, upon information and belief, are likely to transfer or hide their assets to avoid payment of any monetary judgment awarded to Carhartt.

38.     Carhartt has no adequate remedy at law.

39.     Carhartt is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Carhartt Marks. If each Defendant's intentional counterfeiting and infringing, and unfairly competitive activities are not enjoined by this Court, Carhartt and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

40.     The harm and damages sustained by Carhartt have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I – TRADEMARK COUNTERFEITING AND INFRINGEMENT
### PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

41.     Carhartt hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

42.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Carhartt Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

43.     Each Defendant is promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Carhartt Marks. Defendants are continuously infringing and inducing others to infringe the Carhartt Marks by using one or more of the trademarks to advertise, promote, offer to sell, and/or sell counterfeit and infringing Carhartt branded goods.

44.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

45.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Carhartt and are unjustly enriching Defendants with profits at Carhartt's expense.

46.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Carhartt Marks in violation of Carhartt's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Carhartt has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions, while Defendants are earning a substantial profit from those actions.

**COUNT II – FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

48.     Carhartt hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

49.     Defendants' Counterfeit Goods bearing, offered for sale, and/or sold using copies of one or more of the Carhartt Marks have been widely advertised and offered for sale throughout the United States via the Internet.

50.     Defendants' Counterfeit Goods bearing, offered for sale, and/or sold using copies of one or more of the Carhartt Marks are virtually identical in appearance to Carhartt's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

51.     Defendants have each used in connection with their advertisement, offer for sale, and/or sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Carhartt's detriment.

52.     Defendants have authorized infringing uses of one or more of the Carhartt Marks in Defendants' advertisement and promotion of their counterfeit and infringing goods.

53.     Additionally, Defendants are each simultaneously using counterfeits and infringements of one or more of the Carhartt Marks to unfairly compete with Carhartt and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Carhartt of valuable marketing and educational space online which would otherwise be available to Carhartt and (ii) reducing the visibility of Carhartt's genuine goods on the World Wide Web.

54.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

55.     Carhartt has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions, while Defendants are earning a substantial profit from those actions.

## COUNT III – COMMON LAW UNFAIR COMPETITION

56.     Carhartt hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

57.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of the Carhartt Marks in violation of Florida's common law of unfair competition.

58.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and infringements of one or more of the Carhartt Marks. Defendants are also each using counterfeits and infringements of one or more of the Carhartt Marks to unfairly compete with Carhartt and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web.

59.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Carhartt Marks.

60.     Defendants' actions constitute a violation of Florida's common law prohibiting unfair competition.

61.     Carhartt has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions, while Defendants are earning a substantial profit from those actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

62.     Carhartt hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

63.     Carhartt is the owner of all common law rights in and to the Carhartt Marks.

64.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of their Counterfeit Goods bearing and/or using one or more of the Carhartt Marks.

65.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and/or selling goods bearing and/or using infringements of one or more of the Carhartt Marks.

66.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Carhartt Marks.

67.     Defendants' actions constitute a violation of Florida's common law prohibiting trademark infringement.

68.     Carhartt has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions, while Defendants are earning a substantial profit from those actions.

## PRAYER FOR RELIEF

69.     WHEREFORE, Carhartt demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Carhartt Marks; from using the Carhartt Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Carhartt; from falsely representing themselves as being connected with Carhartt, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Carhartt; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Carhartt Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent

Defendants' goods as being those of Carhartt, or in any way endorsed by Carhartt and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of the Carhartt name or trademarks; and from otherwise unfairly competing with Carhartt.

b.      Entry of an injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Carhartt's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, shall disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Carhartt's request, any Internet marketplace website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Names and any other alias e-commerce store names being used by Defendants who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' E-commerce Store Names.

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Carhartt's request, the Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Carhartt Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files that link the E-commerce Store Names, and any other alias e-commerce store names used by Defendants to the IP addresses where the associated e-commerce store names are hosted.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Carhartt's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Carhartt Marks at issue to Carhartt's control so they may no longer be used for unlawful purposes.

g.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to assign all rights, title, and interest, to their E-commerce Store Names, and any other e-commerce store names used by Defendants to Carhartt and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Names, and any other e-commerce store names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Carhartt to request any Internet search engines or service provider referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-commerce Store Names used by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Carhartt.

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct the Registrar(s) for each E-commerce Store Name(s) in writing to permanently close the registration account(s) in which any E-commerce Store Name(s) are located and, if within five (5) days of entry of such Order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Carhartt's request, any messaging service and Internet marketplace and website operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks via the e-commerce stores operating under the E-commerce Store Names, and upon Carhartt's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks associated with or linked to the same sellers or linked to any other e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Carhartt Marks

l.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Carhartt's request, Defendants and any Internet platform or marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing and/or using one or more of Carhartt's Marks in its inventory, possession, custody, or control, and surrender those goods to Carhartt.

m.      Entry of an order requiring, upon Carhartt's request, Defendants to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, or social media website.

n.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Carhartt to serve an injunction issued by the Court on

any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Carhartt Marks.

o.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Carhartt to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Carhartt the true identities and contact information for the registrants of the E-commerce Store Names.

p.      Entry of an order requiring Defendants to account to and pay Carhartt for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Carhartt be trebled, as provided for under 15 U.S.C. § 1117, or that Carhartt be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

q.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Carhartt's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

r.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Carhartt's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Carhartt all funds, up to and including the total amount of judgment, in

all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Carhartt in partial satisfaction of the monetary judgment entered herein.

s.     Entry of an order requiring Defendants, at Carhartt's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

t.     Entry of an award of pre-judgment interest on the judgment amount.

u.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: November 19, 2025.          Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
Mallory R. Denzl (Fla. Bar No. 1050351)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiff, CARHARTT, INC.

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**

SCHEDULE "B"
CARHARTT'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es)/Good(s) |
|---|---|---|---|
|  | 1,193,235 | April 6, 1982 | IC 025 - Clothing-Namely, Shirts, Pants, Coats, Jackets and Overalls |
|  | 1,836,639 | May 17, 1994 | IC 025 - clothing for adults and children; namely, coats, T-shirts, long underwear, tops, bottoms, bib overalls, pants, jackets, vests, coveralls, jeans, suspenders, vests, shirts, sweatshirts, sweatpants, shorts, hoods, hats, socks and gloves. |
| CARHARTT | 1,841,700 | June 28, 1994 | IC 025 - clothing for adults and children; namely, coats, T-shirts, long underwear, tops, bottoms, bib overalls, pants, jackets, vests, coveralls, jeans, suspenders, vests, shirts, sweatshirts, sweatpants, shorts, hoods, hats, socks and gloves. |
|  | 3,595,490 | March 24, 2009 | IC 025 - Clothing, namely, t-shirts, bottoms, sweatshirts, hats |
|  | 4,302,600 | March 12, 2013 | IC 025 - Clothing, namely, coats, shirts, T-shirts, underwear, long underwear, tops, bottoms, bib overalls, pants, jackets, vests, coveralls, jeans, sweat pants, sweat shirts, shorts, parkas, jean jackets, hats, caps, belts, suspenders, hoods, rainwear, gloves, socks, headbands, gaiters; headwear; footwear; boots |

| | | | |
|---|---|---|---|
|  | 4,302,601 | March 12, 2013 | IC 025 - Clothing, namely, shirts, T-shirts, tops, bottoms, pants, jeans |
|  | 4,385,038 | August 13, 2013 | IC 025 - Clothing, namely, coats, shirts, t-shirts, underwear, long underwear, tops, bottoms, bib overalls, pants, jackets, vests, coveralls, jeans, sweat pants, sweat shirts, shorts, parkas, denim jackets, sweaters, hats, caps, belts, suspenders, hoods, rainwear, gloves, socks, headbands, scarves, gaiters; headwear; footwear; boots |